Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YURIE HOBERG,<br><br>      Plaintiff,<br><br>      v.<br><br>SANDERSON FARMS, INC., FRED BANKS, JR., DAVID BARKSDALE, JOHN BIERBUSSE, LAMPKIN BUTTS, MIKE COCKRELL, TONI D. COOLEY, BEVERLY HOGAN, EDITH KELLY-GREEN, PHIL K. LIVINGSTON, SUZANNE MESTAYER, SONIA PEREZ, GALL JONES PITTMAN, and JOE F. SANDERSON, JR.,<br><br>      Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Yurie Hoberg ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Sanderson Farms, Inc. ("Sanderson" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

1

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Sanderson by Walnut Sycamore Holdings LLC ("Parent") and Sycamore Merger Sub LLC ("Merger Sub"), an indirect wholly owned subsidiary of Parent.[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[2]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

---

[1] Parent is jointly controlled by CMSC Poultry, LLC ("CMSC") and Wayne Farms Holdings LLC ("Holdings"). CMSC is owned and controlled by Cargill, Incorporated ("Cargill"). Holdings is majority-owned by Continental Grain Company ("CGC").

[2] For example, the Company reportedly participated in conferences in New York City in recent years.

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of Sanderson common stock.

7. Defendant Sanderson is an integrated poultry processing company that produces, processes, markets, and distributes fresh, frozen, and prepared chicken products in the United States. The Company is incorporated in Mississippi. The Company's common stock trades on the NASDAQ under the ticker symbol, "SAFM."

8. Defendant Fred Banks, Jr. ("Banks") is a director of the Company.

9. Defendant David Barksdale ("Barksdale") is a director of the Company.

10. Defendant John Blerbusse ("Blerbusse") is a director of the Company.

11. Defendant Lampkin Butts ("Butts") is President and a director of the Company.

12. Defendant Mike Cockrell ("Cockrell") is Treasurer, Chief Financial Officer, Chief Legal Officer, and a director of the Company.

13. Defendant Toni D. Cooley ("Cooley") is a director of the Company.

14. Defendant Beverly Hogan ("Hogan") is a director of the Company.

15. Defendant Edith Kelly-Green ("Kelly-Green") is a director of the Company.

16. Defendant Phil K. Livingston ("Livingston") is a director of the Company.

17. Defendant Suzanne Mestayer ("Mestayer") is a director of the Company.

18. Defendant Sonia Perez ("Perez") is a director of the Company.

19. Defendant Gall Jones Pittman ("Pittman") is a director of the Company.

20. Defendant Joe F. Sanderson, Jr. ("J. Sanderson") is Chief Executive Officer and Chairman of the Board of the Company.

21. Defendants Banks, Barksdale, Blerbusse, Butts, Cockrell, Cooley, Hogan, Kelly-Green, Livingston, Mestayer, Perez, Pittman, and J. Sanderson are collectively referred to herein as the "Individual Defendants."

22. Defendants Sanderson and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On August 9, 2021, Sanderson, Cargill, and CGC announced that they had reached a definitive agreement for a joint venture between Cargill and CGC to acquire Sanderson for $203.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Cargill and Continental Grain Company to Acquire Sanderson Farms for $203 per Share in Cash and Create a Leading U.S. Poultry Company**

- All-cash transaction delivers significant and certain value to Sanderson Farms stockholders at a 30.3% premium to the June 18, 2021 unaffected share price, a 22.8% premium to the 30-day VWAP as of June 18, 2021, and 15.2% premium to the all-time high share price as of June 18, 2021
- Transaction brings together two complementary U.S. poultry operators, Wayne Farms and Sanderson Farms, under the joint ownership and control of two premier food and agribusiness companies with deep roots in U.S. agriculture
- Wayne Farms CEO Clint Rivers to lead the combined business

NEWS PROVIDED BY
**Cargill, Inc.**
Aug 09, 2021, 07:00 ET

MINNEAPOLIS and NEW YORK and LAUREL, Miss., Aug. 9, 2021 /PRNewswire/ -- Cargill, Continental Grain Company, and Sanderson Farms, Inc. (NASDAQ: SAFM) announced today they have reached a definitive agreement for a joint venture between Cargill and Continental Grain to acquire

4

Sanderson Farms for $203 per share in cash, representing a total equity value for Sanderson Farms of $4.53 billion. The purchase price represents a 30.3% premium to Sanderson Farms' unaffected share price of $155.74 on June 18, 2021, the last full trading day prior to media speculation about the potential sale of Sanderson Farms; a 22.8% premium to the Sanderson Farms 30-day volume weighted average price ("VWAP") as of June 18, 2021, and a 15.2% premium to the all-time high share price as of June 18, 2021. Upon completion of the transaction, Cargill and Continental Grain will combine Sanderson Farms with Wayne Farms, a subsidiary of Continental Grain, to form a new, privately held poultry business.

\*   \*   \*

TRANSACTION DETAILS

The transaction is expected to close by the end of 2021 or early 2022, and will be subject to regulatory and Sanderson Farms stockholder approval, and other customary closing conditions.

The acquisition consortium has committed equity and debt financing in place to complete the transaction.

Wayne Farms CEO Clint Rivers will lead the combined company.

Upon the completion of the transaction, Sanderson Farms will become a private company, and its shares will no longer be traded on NASDAQ.

BofA Securities acted as the financial advisor to Cargill and Freshfields Bruckhaus Deringer (US) LLP acted as legal counsel. Gibson Dunn & Crutcher acted as tax counsel.

Centerview Partners LLC acted as financial advisor to Sanderson Farms and Wachtell Lipton Rosen & Katz and Fishman Haygood LLP acted as legal counsel. Lazard acted as the financial advisor for Wayne Farms and Continental Grain, and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel.

**About Sanderson Farms**
Sanderson Farms, Inc. is engaged in the production, processing, marketing and distribution of fresh, frozen and minimally prepared chicken. Its shares trade on the NASDAQ Global Select Market under the symbol SAFM.

**About Cargill**
Cargill's 155,000 employees across 70 countries work relentlessly to achieve our purpose of nourishing the world in a safe, responsible and sustainable way. Every day, we connect farmers with markets, customers with ingredients, and people and animals with the food they need to thrive. We combine 156 years of experience with new technologies and insights to serve as a trusted partner for food,

agriculture, financial and industrial customers in more than 125 countries. Side-by-side, we are building a stronger, sustainable future for agriculture.

**About Continental Grain Company**
Conti is a privately owned global investor, owner and operator of companies with more than 200 years of history across the food and agribusiness spectrum. It creates long–term value by applying deep industry knowledge, capital and talent to businesses ranging from established market leaders to promising innovators.

Conti builds platforms that leverage its strategic expertise in food production, processing, and distribution to source proprietary deals, working alongside trusted partners and supporting strong management teams. It brings a long–term ownership mindset, concentrating on investment and operating plans that create enduring value and a sustainable, efficient and nutritional food supply chain. Conti brings people, ideas and resources together to build the businesses that will feed the world.

**About Wayne Farms**
Wayne Farms LLC is a vertically integrated U.S. poultry producer. A subsidiary of Continental Grain Company, Wayne Farms owns and operates fresh and further-processed facilities throughout the Southeast, and employs more than 9,000 individuals. Producing products under the brand names of WAYNE FARMS® fresh and prepared chicken; PLATINUM HARVEST® premium fresh chicken; CHEF'S CRAFT® gourmet chicken; NAKED TRUTH® premium chicken; and LADYBIRD™ premium chicken, Wayne Farms has a well-known history of operating humane, safe, industry-leading poultry processing facilities and delivering exceptional products to some of the largest industrial, institutional, and foodservice companies across the globe.

24. On September 13, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

25. The Proxy Statement, which recommends that Sanderson shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Sanderson's financial projections; (ii) the financial analyses performed by Sanderson's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Centerview.

26. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger; Recommendation of the Board of Directors; (ii) Opinion of Centerview Partners LLC; and (iii) Management Projections.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the October 21, 2021 shareholder vote on the Proposed Transaction, Sanderson shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Sanderson's Financial Projections**

28. The Proxy Statement omits material information concerning Sanderson's financial projections.

29. With respect to the Management Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Net Sales, (ii) EBITDA, (iii) NOPAT, and (iv) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[3]

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Centerview's Analyses

33. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

34. The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Public Company Analysis*": (1) the individual metrics for the companies observed by Centerview in its analysis; (2) the basis for applying a downward adjustment of 25% to the median EV/EBITDA; (3) the Company's net cash; and (4) the number of fully-diluted shares of Company common stock outstanding.

35. The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Precedent Transactions Analysis*": (1) the individual financial metrics of each company

---

[3] *See* Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 24, 2021).

Centerview observed in its analysis; (2) the closing date of each transaction; and (3) the value of each transaction.

36. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 8.5%, (ii) perpetuity growth rates of 1.0% to 2.0%, and (iii) range of EBITDA multiples of 6.7x to 9.1x; (2) all line items underlying the unlevered free cash flows of the Company over the period beginning August 1, 2021 and ending October 31, 2025; (3) the terminal values of the Company; (4) the Company's estimated net cash at July 31, 2021; and (5) the number of shares of Sanderson common stock outstanding as of July 31, 2021.

37. With respect to Centerview's "*Analyst Price Target Analysis*," the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

38. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Sanderson shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Sanderson shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Centerview

39. The Proxy Statement omits material information concerning potential conflicts of

interest involving Centerview.

40. The Proxy Statement fails to disclose the timing and nature of the past services Centerview and/or its affiliates provided Sanderson and its affiliates, including the amount of compensation Centerview received or expects to receive for providing each service.

41. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

46. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 24, 2021                            Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065

                                                        Telephone: (212) 763-0060
                                                        Facsimile: (646) 776-2600
                                                        Email: sadeh@halpersadeh.com
                                                                          zhalper@halpersadeh.com

*Counsel for Plaintiff*